UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

RYAN C.,
Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,
Defendant.

Case No.: 3:25-cv-01816-AHG

**ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW OF THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

**[ECF No. 19]**

On March 24, 2026, Ryan C. ("Plaintiff") and the Commissioner of Social Security ("Commissioner" or "Defendant") filed a Joint Motion for Judicial Review of the Final Decision of the Commissioner of Social Security ("Joint Motion") pursuant to 42 U.S.C. § 405(g), regarding Plaintiff's request for judicial review of a decision by the Commissioner denying Plaintiff's application for supplemental security income. ECF No. 19.

For the reasons set forth below, the Court resolves the Joint Motion in Plaintiff's favor, **GRANTS** Plaintiff's motion to remand, and **REMANDS** this action for calculation of benefits to be awarded to Plaintiff.

## I. BACKGROUND

Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act on November 17, 2022, alleging a disability onset date of

August 5, 2021. Certified Administrative Record ("AR") 56, 506–522. The Commissioner denied Plaintiff's claim initially on February 6, 2023, and denied reconsideration on November 16, 2023. AR 393–98; 400–02. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 20, 2024. AR 80–112.

On August 19, 2024, the ALJ issued an unfavorable decision denying Plaintiff's application. AR 53–70. The ALJ found that Plaintiff has no past relevant work. AR 68. The ALJ also found that Plaintiff could perform jobs that exist in significant numbers in the national economy and therefore had not been under a disability since November 17, 2022, the date his application was filed. AR 69–70.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review on June 11, 2025. AR 1–7. Plaintiff timely filed this action on July 17, 2025. ECF No. 1; 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Court may set aside the Commissioner's denial of benefits only if it is not supported by substantial evidence or is based on legal error. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). The standard is "highly deferential." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion,

and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted). The ALJ is responsible for resolving conflicts in the medical evidence and ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Further, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

Even where the ALJ commits legal error, the Court may not reverse if the error is harmless—that is, where it is inconsequential to the ultimate nondisability determination. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014); *see also Burch*, 400 F.3d at 679 (citation omitted).

## III. SUMMARY OF ALJ'S FINDINGS

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920;[1] *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities,

[1] Unless otherwise noted, all references to the agency regulations herein are to the regulations in effect at the time of the ALJ's decision. *See, e.g.*, SSR 16-3, 2016 SSR LEXIS 4 n.27 (S.S.A. 2016) ("When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."); *Anne B. v. Comm'r, Soc. Sec. Admin.*, No. 1:18-CV-02146-HZ, 2019 WL 6976034, at *8 (D. Or. Dec. 20, 2019) (collecting cases for the proposition that "[t]he applicable regulations are those in effect at the time the ALJ issued his decision"). The regulations governing Title XVI supplemental security income ("SSI") claims are located in 20 C.F.R. § 416.101 *et seq.*

and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. *Id. See also* 20 C.F.R. § 416.909 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed, and benefits are awarded. *Lounsburry*, 468 F.3d at 1114.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. *Id.* Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments—even those that are not severe (*see* 20 C.F.R. § 416.945(a)(1)–(2), (e))—and must assess his "work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1; *see also Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012).

An RFC determination must be based on all relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 416.945. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence

in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that he is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the Commissioner to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.960(c)(1), (c)(2); *see also* 20 C.F.R. § 416.920(g)(1). The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. § 416.920; *Tackett*, 180 F.3d at 1099.

**B. The ALJ's Application of the Five-Step Process in This Case**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 17, 2022, the application date. AR 59. At step two, the ALJ determined that Plaintiff has the following severe impairments: autism spectrum disorder, history of attention deficit hyperactivity disorder (ADHD), depression, anxiety, tic disorder, and panic disorder. AR 59.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listing, noting that he had considered Listings 12.04, 12.06, and 12.11. AR 60. The ALJ determined that Plaintiff has moderate limitations in understanding, remembering, or applying information, as well as in interacting with others. AR 60. The ALJ also determined that Plaintiff has moderate limitations in concentrating, persisting, or maintaining pace, and in adapting or managing oneself. AR 61.

Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with

certain nonexertional limitations. AR 61–62. Specifically, the ALJ determined that Plaintiff:

> . . . can understand, remember, and carry out simple, routine, repetitive tasks, with breaks every two hours; have no interaction with the general public; and have only occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product. He could not perform highly time-pressured tasks and would be limited to generally goal-oriented work without time-sensitive strict production quotas, and to a low-stress environment in which he would not have to switch from task to task and would have minimal decision-making capability.

AR 61–62.

At step four, the ALJ concluded that Plaintiff has no past relevant work. AR 68. At step five, the ALJ considered that Plaintiff was a "younger individual" as of the date the application was filed and that he has at least a high school education. AR 69. Based on the vocational expert's testimony, the ALJ determined that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 70. Specifically, the ALJ found that Plaintiff could perform the medium-exertion jobs of Cleaner, Hand Packager, and Day Worker. AR 69. The ALJ concluded that Plaintiff had not been under a disability since November 17, 2022, the date his application was filed. AR 70.

## IV. <u>DISCUSSION</u>

Plaintiff brings two claims of error in the Joint Motion: 1) the ALJ failed to properly consider the psychiatric medical opinion of Dr. Gregory Nicholson, and 2) the ALJ failed to properly consider Plaintiff's testimony. ECF No. 19 at 4.

### A. <u>The ALJ Erred in Evaluating Dr. Nicholson's Opinion</u>

As his first claim of error, Plaintiff argues that the ALJ failed to properly evaluate the opinion of consultative examiner Dr. Gregory Nicholson. ECF No. 19 at 4–18. Plaintiff contends that although the ALJ found Dr. Nicholson's opinion partially persuasive, the ALJ failed to adequately address Dr. Nicholson's finding that Plaintiff was moderately

limited in performing work activities without special or additional supervision. *Id.* Defendant responds that the ALJ reasonably found Dr. Nicholson's opinion only partially persuasive and adequately accounted for the supported limitations in the RFC. *Id.* at 15–18.

**1. Legal Standard**

With respect to the ALJ's consideration of medical opinion evidence, the Social Security Administration's revised regulations for considering medical opinions and prior administrative findings, found at 20 C.F.R. § 416.920c(c)(1)–(c)(5), apply because Plaintiff filed his SSI application after March 27, 2017. AR 56 (application filed November 17, 2022). The Ninth Circuit has recognized that these new regulations upend the longstanding treating physician rule. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Rather than attributing deference to a medical opinion based on the nature of the relationship between the physician and the claimant, an ALJ must evaluate the "persuasiveness" of any medical opinions. *Id.* at 792.

In evaluating persuasiveness, an ALJ must consider the medical source opinion's supportability, its consistency, the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. *Id.*; 20 C.F.R. § 416.920c(c)(1)–(c)(5). Though an ALJ may discuss each of the factors to be considered in his opinion, the regulations only require the ALJ to explain how he considered the most important factors—supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability examines the relevant objective medical evidence and supporting explanations presented by the source. 20 C.F.R. § 416.920c(c)(1). Consistency examines the evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

Under the revised regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787; *see also Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (explaining how an

ALJ weighing a medical opinion must provide an explanation supported by substantial evidence, which articulates how the ALJ considered supportability and consistency); *Sloane S. v. Kijakazi*, No. 21cv1043-MMA-MSB, 2023 WL 2017284, at *4 (S.D. Cal. Feb. 15, 2023). ALJs must address how they considered the consistency and supportability factors in sufficient detail to allow a reviewing court to determine whether that reasoning is supported by substantial evidence. *Titus L.S. v. Saul*, No. 20cv04825-AFM, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)).

Ultimately, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Massey v. Kijakazi*, No. 21-35986, 2022 WL 16916366, at *1 (9th Cir. Nov. 14, 2022) (quoting *Garrison*, 759 F.3d at 1012–13); *see also Labryssa v. Kijakazi*, No. 21cv04233-BLF, 2022 WL 2833981, at *7 (N.D. Cal. July 20, 2022) (finding a lack of substantial evidence where the ALJ failed to engage with the medical opinion "in any meaningful sense" and "made only a passing assessment" of the supportability and consistency factors).

**2. Analysis**

The medical opinion at issue is the December 22, 2022 psychiatric consultative examination performed by Dr. Gregory Nicholson. AR 4669–75. During the examination, Plaintiff reported difficulty concentrating, forgetfulness, losing and misplacing things, difficulty staying organized, restlessness, panic attacks, depressed mood, irritability, insomnia, decreased energy, and decreased interest in activities. AR 4670. Plaintiff also reported multiple prior suicide attempts. AR 4670. He had never worked and was living with his parents. AR 4671. Dr. Nicholson diagnosed unspecified tic disorder, unspecified ADHD, panic disorder, and unspecified depressive disorder. AR 4673. In his functional assessment, Dr. Nicholson opined that Plaintiff was moderately limited in his ability to relate and interact with coworkers and the public; mildly limited in maintaining

concentration, attention, persistence, and pace; mildly limited in accepting instructions from supervisors; mildly limited in maintaining regular attendance and performing work activities on a consistent basis; and moderately limited in performing work activities without special or additional supervision. AR 4674.

The ALJ discussed Dr. Nicholson's examination and found his opinion partially persuasive. AR 66–67. The ALJ found that Dr. Nicholson's opinion was supported by his examination findings and also found portions of the opinion consistent with the treatment record. AR 66–67. The ALJ incorporated several mental limitations into the RFC, including restrictions to simple, routine, repetitive tasks; no interaction with the general public; only occasional work-related interaction with coworkers and supervisors; and a low-stress work environment with minimal decision-making. AR 61–62. Additionally, the ALJ found Dr. Nicholson's use of terms such as "mild" and "moderate" to be "vague" and "non-policy compliant," explaining that those terms did not describe specific work-related restrictions. AR 66–67.

The Court recognizes that the ALJ was not required to adopt every limitation assessed by Dr. Nicholson. However, the ALJ did not adequately explain his treatment of Dr. Nicholson's finding that Plaintiff was moderately limited in performing work activities without special or additional supervision. AR 4674. The RFC does not contain an express restriction addressing Plaintiff's ability to perform work activities without special or additional supervision. AR 61–62. This omission matters because the supervision limitation is different from the restrictions the ALJ included in the RFC. Limiting Plaintiff to simple, routine, repetitive tasks addresses the type of work Plaintiff can perform, while limiting his interaction with the public, coworkers, and supervisors addresses contact with other people. AR 61–62. These restrictions do not address whether Plaintiff can perform his work without special or additional supervision. Because the RFC does not include that limitation, the ALJ was required to explain why it was not adopted. *See* SSR 96-8p, 1996 WL 374184, at *7 (requiring an ALJ to explain why a medical opinion conflicting with the RFC was not adopted).

The ALJ's characterization of Dr. Nicholson's use of the term "moderate" as "vague" does not adequately explain why the supervision limitation was discounted. Although "moderate" does not itself specify a concrete work restriction, Dr. Nicholson identified the particular ability affected—Plaintiff's ability to perform work activities without special or additional supervision. Courts have rejected similar attempts to discount medical opinions merely because the physician used terms such as "mild" or "moderate" to describe functional limitations. *See Vincent L.P. v. Saul*, No. 2:20-CV-05716-JC, 2021 WL 2209674, at *4 (C.D. Cal. May 31, 2021) (finding that the ALJ's characterization of the physician's use of "moderate" as "vague" was not a sufficient reason for discounting the opinion); *see also Lisardo S. v. Berryhill*, No. 5:18-CV-00480-AFM, 2019 WL 773686, at *6 (C.D. Cal. Feb. 20, 2019) (finding error where the ALJ discounted an examining physician's opinion as "vague and unclear" because the physician assessed "moderate limitations"); *Vasquez v. Berryhill*, No. 1:16-CV-00448-GSA, 2017 WL 2633413, at *6 (E.D. Cal. June 19, 2017) (finding that the ALJ could not reject an examining physician's moderate limitations as "vague and ambiguous").

Defendant also argues that the ALJ reasonably found Dr. Nicholson's opinion inconsistent with Plaintiff's "intact mental status and effective treatment." ECF No. 19 at 17. In support, Defendant points to the treatment records cited by the ALJ, which Defendant contends reflect intact mental-status findings and improvement with treatment. *Id.*; AR 67. The Court does not question that these records contain generally intact mental-status findings and evidence of some improvement with treatment. The question, however, is whether that evidence contradicts Dr. Nicholson's specific supervision limitation. The records include findings such as cooperative behavior, normal speech, coherent or linear thought processes, good judgment, and fair or good insight. ECF No. 19 at 17; AR 4741, 4745, 4752, 4756, 4762, 4770, 4822, 4826–27, 4840–41, 4869, 4882. But these findings do not directly address Plaintiff's ability to perform work activities without special or additional supervision. Moreover, some of the same records reflect continuing psychiatric symptoms and functional limitations. A March 28, 2023 progress note reflects a linear

thought process and good judgment, but also documents Plaintiff's continued reports of significant depression and anxiety. AR 4766–71. A November 20, 2023 progress note reflects normal and cooperative behavior, alert cognition, and coherent thought processes, while also diagnosing Plaintiff with severe, recurrent major depressive disorder. AR 4824–27. Although a February 2024 appointment reflected generally normal mental-status findings, Plaintiff's provider increased Cymbalta to 40 mg and added hydroxyzine for anxiety and insomnia. AR 4836–41. Thus, the ALJ could properly consider these mental-status findings in evaluating the consistency of Dr. Nicholson's opinion, but the decision does not explain how they undermine the particular finding that Plaintiff was moderately limited in performing work activities without special or additional supervision. AR 4674.

The record also contains evidence supporting Dr. Nicholson's supervision limitation. In his Function Report, Plaintiff stated that he can pay attention for only a "small period of time" before losing concentration. AR 821. When asked about spoken instructions, Plaintiff explained, "Sometimes I am told to do something, and I have to be reminded." AR 821. A January 31, 2023 progress note similarly documented that Plaintiff was "easily overwhelmed and loses focus." AR 4689. Plaintiff later testified that he had never obtained a driver's license because his doctor advised against driving due to his inability to focus and concern that Plaintiff "could be a danger to the road." AR 86. Plaintiff's mother testified that she reminds him to take medication, get dressed, and complete basic daily activities, and attends his medical appointments because he does not always pay attention when medication changes and treatment are discussed. AR 103–05. Plaintiff's experience in community college provides additional context. Although Plaintiff has attended community college since approximately 2019, he testified that he takes only one class per semester. AR 87–90. An April 7, 2023 progress note also reflects that Plaintiff reported being able to manage only one class per semester because he became easily overwhelmed. AR 4757–58. Viewed together, Plaintiff's reports, his mother's testimony, and the treatment records are consistent with Dr. Nicholson's assessment that Plaintiff was

moderately limited in performing work activities without special or additional supervision. AR 4674.

Defendant relies on *Rounds v. Commissioner of Social Security Administration*, 807 F.3d 996, 1006 (9th Cir. 2015). ECF No. 19 at 16. Specifically, Defendant notes that "[t]he Ninth Circuit has long recognized that the RFC determination rests with the ALJ and includes the responsibility to translate and incorporate clinical findings into a succinct residual functional capacity." *Id.* The Court does not disagree with that general proposition. However, Defendant's reliance on *Rounds* does not resolve the issue here. The relevant question is not whether the ALJ had authority to translate Dr. Nicholson's findings into concrete work restrictions, but whether the ALJ adequately explained his treatment of Dr. Nicholson's supervision limitation.

The Social Security Administration's own Program Operations Manual System ("POMS") further supports treating the supervision limitation separately. Under the heading "Mental Abilities Critical for Performing Unskilled Work," the POMS separately identifies the ability to "sustain an ordinary routine without special supervision" as an ability needed for unskilled work. POMS DI 25020.010(B)(2)(a)–(c), (3)(f). The POMS lists this ability separately from other mental abilities, including maintaining concentration and attention, maintaining regular attendance, and carrying out instructions and responding appropriately to criticism from supervisors. *Id.* Thus, the POMS further supports treating the ability to work without special supervision as a distinct functional ability rather than one necessarily encompassed by limitations involving simple work or interaction with supervisors.

Having found that the ALJ did not adequately address Dr. Nicholson's supervision limitation, the Court next considers whether the error was harmless. An ALJ's error does not warrant reversal if it is harmless. *See Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). An error is harmless only if it is "inconsequential to the ultimate nondisability determination." *Brown-Hunter*, 806 F.3d at 494 (quotations omitted). When "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's

conclusions were supported by substantial evidence,' we cannot treat the error as harmless." *Lambert*, 980 F.3d at 1278 (quoting *Treichler*, 775 F.3d at 1103).

The ALJ's error was not harmless. During the administrative hearing, Plaintiff's counsel asked the vocational expert to consider an individual requiring frequent supervision, defined as supervisory intervention approximately once an hour to keep an individual "on task, on track." AR 110–11. The vocational expert testified that such frequent supervision would not be consistent with competitive employment. AR 111. Thus, the supervision limitation could affect the ultimate disability determination. Because the ALJ did not adequately explain his treatment of Dr. Nicholson's supervision limitation, the Court cannot conclude that the error was harmless.

For these reasons, the Court finds that the ALJ failed to properly evaluate Dr. Nicholson's medical opinion, and that the error was not harmless.

**B. The ALJ Erred in Discrediting Plaintiff's Testimony**

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's testimony regarding the severity of his psychiatric symptoms and resulting limitations. ECF No. 19 at 18–34. Plaintiff argues that the ALJ failed to identify the specific testimony he discounted and link that testimony to particular evidence in the record, and that the objective medical evidence alone was insufficient to support the ALJ's evaluation of Plaintiff's testimony. *Id.* at 21–25. Defendant contends that the ALJ properly evaluated Plaintiff's testimony and reasonably found that Plaintiff's allegations were inconsistent with the objective medical evidence, his response to treatment, his attendance at community college, and generally normal mental status examinations. *Id.* at 28–33.

**1. Legal Standard**

An ALJ evaluating a claimant's testimony regarding the extent of his symptoms and impairments must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, the ALJ must determine whether there is objective medical evidence to support the testimony. *Id.* If so, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives 'specific,

clear and convincing reasons' for the rejection." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). An ALJ must "specifically identify the testimony [he] finds not to be credible ... and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).[2] "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680.

If the ALJ fails to meet these requirements for specificity, the Court may not fill in the gaps. *Lambert*, 980 F.3d at 1278. A reviewing court is therefore "constrained to review the reasons the ALJ asserts." *Id.* (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

**2. Plaintiff's Testimony**

In his Function Report, Plaintiff described significant limitations arising from his autism spectrum disorder, ADHD, anxiety, panic disorder, depression, and tic disorder.

---

[2] The Social Security Administration published new guidance regarding how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p). Additionally, effective March 27, 2017, the Social Security Administration updated the relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20 C.F.R. § 416.929. Although the ALJ's opinion was issued after these changes, the jurisprudence governing the applicable two-step inquiry remains good law. *See, e.g.*, *Campbell v. Saul*, 848 F. App'x 718, 721 (9th Cir. 2021) (applying the two-step inquiry in a recent case appealing an ALJ's decision from 2018, in which the newer regulations were applied); *Vooge v. Saul*, 840 F. App'x 253, 254 (9th Cir. 2021) (same, in case involving an ALJ's opinion issued in January 2019). *See also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth Circuit precedent regarding the ALJ's assessments of an individual's testimony).

Plaintiff reported difficulty completing tasks, understanding, and following written and spoken instructions, and stated that he can only pay attention for small periods of time before losing concentration. AR 821. Plaintiff also reported that stress and changes in routine are difficult for him to handle. AR 822. Regarding his ability to function independently, Plaintiff reported that he mostly stays home and that his "anxiety takes over" when he leaves home. AR 820, 823. He further reported that his mother supports him with daily activities including washing his hair and shaving. AR 817.

At the hearing held on June 20, 2024, Plaintiff provided testimony regarding the severity and persistence of his symptoms. Plaintiff explained that he did not believe he could "hold down a job" due to his difficulty processing information and anxiety in public settings. AR 90. Plaintiff testified that other people "process things faster and can tend to understand things better than I do," and that it "takes me time to really understand something." AR 90. He further testified that he rarely goes out and that, when he does, his parents generally drive him. AR 86–87. Plaintiff testified that he has never obtained a driver's license because his doctor advised against driving due to his inability to focus and concern that Plaintiff "could be a danger to the road." AR 86. Plaintiff also testified that he has never attempted to use public transportation because it is "too weird of a setting" for him to feel comfortable in. AR 90–91. Plaintiff further testified that his parents "constantly" remind him to take his medication and remind him to eat several times a week. AR 102.

Plaintiff additionally testified regarding his limited course load in community college. Although Plaintiff has attended community college since approximately 2019, he testified that he takes only one class per semester because of his difficulty focusing and the amount of time it takes him to complete assignments. AR 87–88, 90. Despite years of attendance, Plaintiff had not obtained a degree by the time of the hearing. AR 88–90.

### 3. The ALJ's Reasons for Rejecting Plaintiff's Testimony

The ALJ found that Plaintiff has the severe impairments of autism spectrum disorder, history of attention deficit hyperactivity disorder (ADHD), depression, anxiety,

tic disorder, and panic disorder. AR 59. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying the first step of the inquiry. AR 65. The ALJ did not make a finding of malingering. Therefore, the ALJ was required to provide specific, clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163.

**a. Failure to Adequately Identify and Link Plaintiff's Discounted Testimony**

An ALJ must "specifically identify the testimony ... he finds not to be credible and ... explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Here, in evaluating Plaintiff's testimony, the ALJ included the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 65. Courts have repeatedly found this language to be too general and boilerplate to satisfy the requirement that an ALJ specifically identify the testimony being discounted. In *Lambert*, for example, the Ninth Circuit found that identical language was insufficient to meet the ALJ's burden:

> The ALJ's decision does not meet the requirements set forth in our cases and does not permit meaningful review. The ALJ noted generically that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in the decision." But this "boilerplate statement" by way of "introductory remark," which is "routinely include[d]" in ALJ decisions denying benefits, did not "identify what parts of the claimant's testimony were not credible and why."

*Lambert*, 980 F.3d at 1277; *Burrell*, 775 F.3d at 1138 (general statement that testimony is "inconsistent in some unspecified way" is insufficient); *Treichler*, 775 F.3d at 1103 (noting

that identical boilerplate statement was insufficient because the "ALJ must identify the testimony that was not credible").

The problem with this boilerplate language is that "statements concerning the intensity, persistence and limiting effects" is too general a description for the Court to understand precisely what portions of Plaintiff's testimony are claimed to be inconsistent with other evidence in the record. *Isis A. v. Saul*, No. 18cv01728-W-MSB, 2019 WL 3554969, at *4 (S.D. Cal. Aug. 5, 2019) ("When an ALJ fails to specify the rejected testimony and how the evidence provides clear and convincing reasons to reject it, the reviewing court cannot proceed without 'substitut[ing its own] conclusions for the ALJs, or speculat[ing] as to the grounds for the ALJ's decision.") (quoting *Treichler*, 775 F.3d at 1103).

Plaintiff's testimony reflects several distinct functional limitations, including difficulty focusing and processing information, inability to drive because of problems maintaining attention, reliance on his parents for transportation and reminders, difficulty functioning independently, and an inability to manage more than one college course per semester. These symptoms and their resulting limitations are varied and cannot be treated as a unitary complaint. *See Lambert*, 980 F.3d at 1278.

The ALJ acknowledged that Plaintiff's impairments could reasonably produce his symptoms but concluded that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record." AR 65. The ALJ thereafter cited Plaintiff's treatment history, socialization, absence of inpatient psychiatric treatment, and objective medical findings. AR 65. Although the ALJ summarized portions of Plaintiff's testimony and the medical evidence, he did not adequately identify which portions of Plaintiff's testimony he discounted and link that testimony to the evidence he found contradictory. AR 62–65; *see Brown-Hunter*, 806 F.3d at 489 (holding that failure to identify specific testimony and link it to evidence constitutes reversible error). Without that connection, the Court would be required to determine for itself which evidence the ALJ believed contradicted which portions of Plaintiff's testimony. The Court may not supply

reasoning that the ALJ did not provide. *See Lambert*, 980 F.3d at 1278; *Treichler*, 775 F.3d at 1103.

**b. Lack of Substantial Evidence Supporting the ALJ's Reasons for Discounting Plaintiff's Testimony**

The ALJ repeatedly relied on findings that Plaintiff had coherent thought processes, intact memory, average intelligence, normal concentration during office visits, cooperative interactions with providers, and good eye contact. AR 63–65. Objective medical evidence is relevant to the evaluation of a claimant's testimony. However, an ALJ may not reject a claimant's subjective complaints solely because the objective medical evidence does not fully corroborate the alleged severity of the symptoms. *Burch*, 400 F.3d at 680.

The ALJ did not adequately explain how those findings contradicted Plaintiff's particular functional complaints. Plaintiff testified that he has never obtained a driver's license because his doctor advised against driving due to his inability to focus. AR 86. He does not go out often and, when he does, his parents generally drive him. AR 86–87. He has never attempted to use public transportation because he is uncomfortable in that setting. AR 90–91. Plaintiff's mother testified that she continues to remind Plaintiff to take medication, get dressed, and complete basic daily activities. AR 105. She also testified that Plaintiff has become more isolated and "just stays at home in his room." AR 106. She further testified that she attends Plaintiff's appointments because Plaintiff does not always pay attention during discussions regarding medication changes and treatment. AR 104–05. The ALJ did not explain how isolated findings of normal concentration during office visits contradicted Plaintiff's reported difficulties maintaining attention and functioning independently.

The ALJ's reliance on Plaintiff's cooperative interactions and good eye contact with providers is similarly insufficient. Plaintiff's ability to participate appropriately during brief office visits does not necessarily conflict with his testimony that he struggles to maintain focus, function independently, and tolerate social interactions outside structured settings. Plaintiff's mother reported, for example, that Plaintiff "can't wait to get back

home" when placed in public settings, and that he sleeps all day and is up all night. AR 799. The ALJ did not explain how Plaintiff's presentation during medical appointments contradicted these reported difficulties.

The ALJ also relied on Plaintiff's attendance at community college, but did not address the circumstances under which Plaintiff attended school. Plaintiff testified that he has attended community college since approximately 2019 but has only been able to take one class per semester because of his difficulty focusing and the amount of time it takes him to complete assignments. AR 87–88, 90. The record further reflects that Plaintiff was eligible for disability-related accommodations at community college, including 100% extended time on quizzes and examinations. AR 854. Despite years of attendance, Plaintiff had not obtained a degree by the time of the hearing. AR 88–90. The ALJ did not explain how this limited and highly accommodated school attendance was inconsistent with Plaintiff's claimed limitations or translated into an ability to perform full-time competitive work.

Defendant also relies on evidence that Plaintiff experienced some improvement with treatment. ECF No. 19 at 30–31. The record reflects periods of improvement, including a report that Plaintiff was managing his coursework well and that Adderall helped him with homework. AR 4739, 4867. However, as the Ninth Circuit has explained, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment" as "[c]ycles of improvement and debilitating symptoms are a common occurrence," and an ALJ may not "pick out a few isolated instances of improvement . . . and treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. Plaintiff continued receiving psychiatric treatment and medication management, and in February 2024, his provider increased his Cymbalta dosage despite generally normal mental-status findings. AR 4836–41. The ALJ did not explain how Plaintiff's periods of improvement or response to medication contradicted his particular testimony regarding difficulty maintaining attention, functioning independently, and completing tasks.

Finally, the ALJ characterized Plaintiff's condition as relatively controlled based in part on the absence of "invasive treatment such as inpatient psychiatric treatment." AR 65. This reasoning is flawed. The absence of psychiatric hospitalization does not necessarily undermine a claimant's allegations of disabling mental health symptoms, particularly where the record reflects ongoing psychiatric treatment, continued medication adjustments, and persistent functional complaints. *See Quiroz v. Berryhill*, No. 8:16-CV-02127-GJS, 2018 WL 922130, at *7 (C.D. Cal. Feb. 14, 2018) ("Nothing in Social Security jurisprudence requires mentally impaired claimants to be subjected to harsh treatments—whether involuntary psychiatric hospitalizations . . . or other non-routine care—before they can be found to be disabled.") (internal quotations omitted); *Matthews v. Astrue*, No. EDCV 11–01075–JEM, 2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012) ("Claimant does not have to undergo inpatient hospitalization to be disabled.").

The Ninth Circuit has also cautioned that an ALJ may not place undue weight on a handful of normal findings while overlooking the broader record. *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (requiring consideration of the overall diagnostic picture). Here, the ALJ was entitled to consider Plaintiff's normal mental-status findings, response to treatment, college attendance, and level of treatment. But those facts had to be considered in the context of the broader record, which reflects continuing difficulty functioning independently, maintaining focus, and handling social interactions.

Taken together, the ALJ's reliance on generally normal mental-status findings, Plaintiff's college attendance, periods of improvement with treatment, and the absence of inpatient psychiatric treatment does not provide specific, clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony.

The ALJ's error was also not harmless. Plaintiff's testimony described limitations directly relevant to his ability to sustain competitive employment, including difficulty maintaining attention, following instructions, completing tasks, processing information, and functioning independently. AR 85–102, 816–23. The RFC did not expressly account for the full extent of these alleged limitations. AR 61–62. Because proper consideration of

Plaintiff's testimony could have resulted in additional limitations in the RFC and affected the ultimate disability determination, the Court cannot conclude that the error was harmless.

For these reasons, the Court finds that the ALJ erred in evaluating Plaintiff's testimony and that the error was not harmless.

## V. THE APPROPRIATE REMEDY

The remaining question is whether this case should be remanded for further administrative proceedings or for the immediate calculation and award of benefits. To make this determination, the Court applies the "credit-as-true" rule. *Trevizo*, 871 F.3d at 682. Under that rule, the Court considers whether: (1) the record has been fully developed and further proceedings would serve a useful purpose; (2) the ALJ did not provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence were credited as true, the claimant would be found disabled. *Id.* at 682–83 (quoting *Garrison*, 759 F.3d at 1020). When these factors are met, remand for an award of benefits may be appropriate. *Burrell*, 775 F.3d at 1141.

All three factors are satisfied here. First, to determine whether further administrative proceedings would be useful, courts consider "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal standard." *Treichler*, 775 F.3d at 1103–04. "[T]he key consideration is whether remanding for further administrative proceedings would serve a useful purpose or would instead unnecessarily extend a claimant['s] long wait for benefits." *Norris v. Colvin*, 160 F. Supp. 3d 1251, 1284 (E.D. Wash. 2016) (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). Here, the record has been fully developed. It includes years of psychiatric treatment records, Dr. Nicholson's consultative examination and medical opinion, Plaintiff's Function Report and testimony, Plaintiff's mother's report and testimony, and vocational expert testimony. The vocational expert was specifically questioned about whether an individual requiring frequent supervisory intervention could sustain competitive employment. AR 110–11.

Second, as discussed above, the ALJ did not adequately evaluate Dr. Nicholson's supervision limitation and did not provide legally sufficient reasons for discounting Plaintiff's testimony. The decision did not explain whether Dr. Nicholson's finding that Plaintiff was moderately limited in performing work activities without special or additional supervision was accepted, rejected, or incorporated into the RFC. The ALJ also failed to provide specific, clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony. Thus, the second factor is satisfied.

Third, if the improperly rejected evidence is credited as true, Plaintiff would be found disabled. Dr. Nicholson specifically found that Plaintiff was moderately limited in his ability to perform work activities without special or additional supervision. Dr. Nicholson separately assessed other areas of mental functioning, finding only mild limitations in Plaintiff's ability to maintain concentration, attention, persistence, and pace; accept instructions from supervisors; and maintain regular attendance and perform work activities on a consistent basis. AR 4674.

Plaintiff's testimony and his mother's testimony provide further evidence regarding the extent of Plaintiff's need for reminders and redirection. Plaintiff testified that his parents constantly remind him to take his medication and remind him to eat several times a week. AR 102. Plaintiff's mother similarly testified that Plaintiff needs reminders or redirection "all the time." AR 105. She described reminding Plaintiff to take medication, get dressed for appointments, clean his room, pick up after himself, brush his teeth, and comb his hair, and summarized that Plaintiff requires "[a] lot of reminders." AR 105. She also testified that she attends Plaintiff's medical appointments because Plaintiff often does not pay attention to discussions concerning medication changes and treatment. AR 104–05.

Plaintiff's counsel asked the vocational expert to consider an individual who needed "frequent supervision," meaning that a supervisor would need to intervene approximately once an hour during the workday "in order to keep them on task, on track." AR 110–11. The vocational expert testified that such supervisory intervention "would not be consistent

with competitive employment." AR 111. When asked what level of supervision would ordinarily be expected, the vocational expert explained that the amount of supervision depends on the tasks and duties involved, but that an individual generally receives the greatest amount of supervision during orientation to ensure an understanding of the tasks and duties and "beyond that, there's really no need other than an annual performance appraisal." AR 111. Although Dr. Nicholson's use of the term "moderate" does not establish a specific frequency of workplace supervision, the Court considers his assessment together with the testimony describing the nature and frequency of Plaintiff's need for reminders and redirection. If the improperly rejected evidence is credited as true, Plaintiff would therefore be found disabled.

Accordingly, remand for the immediate calculation and award of benefits is appropriate. *See Benecke*, 379 F.3d at 595.

## VI. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ failed to properly evaluate Dr. Nicholson's medical opinion and failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony.

The Court therefore resolves the Joint Motion in Plaintiff's favor, **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), and **REMANDS** this action for calculation and award of benefits to Plaintiff.

**IT IS SO ORDERED**.

Dated: September 14, 2026

Honorable Allison H. Goddard
United States Magistrate Judge